### Breyer v. Herrlinger

*Jonathan D. Dunn,* for plaintiffs.
*John J. Rufe,* for defendants.

HONEYMAN, J., November 16, 1973.—This equity action was commenced on complaint filed on October 23, 1973, and it contained a prayer for preliminary injunctive relief. A hearing on such application was held on November 14, 1973, and counsel and the parties agreed that said hearing could constitute a full and final hearing of the issues involved. All averments of the complaint were deemed to be denied, since defendants had not yet filed their responsive answer. The hearing concluded on November 15, 1973, and the court now adjudicates the matter in accordance with Pennsylvania Rule of Civil Procedure 1517.

## STATEMENT OF THE ISSUES

1. Does the maintenance of two or more geese known as "Canadian Honkers" on the residential premises of defendant constitute a private nuisance to plaintiffs, who own and occupy adjacent residential premises?

2. Does the maintenance of an earth pond on defendants' premises close to the common boundary

of the parties' properties, which is not fed by any running stream of water, constitute a private nuisance to plaintiffs because of the spillage onto plaintiffs' property and the emanation of offensive odors from the algae forming on the top of the stagnant water?

3. Does the maintenance of approximately 200 racing pigeons in outbuildings on defendants' property constitute a private nuisance to plaintiffs?

## FACTS

This unfortunate neighborhood fight ripened into this litigation recently after it had been festering for almost one year. Although the properties of the parties have frontage on two different roads, to wit: Geryville Pike and Magazine Road, which intersect at right angles, the rear property line of defendants' premises abuts on a portion of the northerly sideline of plaintiffs' property. Although the complaint of plaintiffs enumerates a larger number of items about which they complain against defendants with respect to the manner in which defendants occupy their residential premises, at trial the proofs were limited to three items as indicated in the statement of issues above.

Both properties are zoned for residential purposes, but they are situate in a semi-rural area. For some years antedating the enactment of the Zoning Ordinance of Marlborough Township, defendants maintained various assortments of farm animals and domesticated animals on their premises. Most recently, it has been limited to geese known as Canadian Honkers, racing pigeons, including breeders, and dogs and cats. The first Canadian Honkers arrived on the scene in 1971 and shortly thereafter, defendants excavated for the pond which has since been filled with water. At various times there has been spillage of water from the pond onto the premises of plaintiffs.

Also, the water in the pond has stagnated and algae has formed on the surface thereof and, particularly in the warm weather months, obnoxious odors have emanated therefrom and permeated the atmosphere of plaintiffs' premises. The shelters for the geese are adjacent to the pond, and the pond, shelter and geese are all within 35 to 50 feet to the rear of the dwelling house of plaintiffs.

In 1971, defendants first had four Canadian Honkers and two of them died. In 1972, he obtained six more Canadian Honkers. Thereafter, upon receipt of the initial complaint from plaintiffs, defendants divested themselves of all but two of the Canadian Honkers, but during the course of 1973, nature took its course and four young Honkers appeared on the scene. After they grew into maturity, defendants disposed of them. Canadian Honkers are very noisy birds and are excitable and make loud noises when they are disturbed and when they are mating. The honking of the Honkers, particularly during the night hours, penetrated the walls and windows of plaintiffs' dwelling house and disturbed their slumbers. Also, as the physician for Mrs. Breyer characterized it, the acoustical trauma resulting therefrom had a deleterious effect upon the health of Mrs. Breyer.

Ever since 1957, the Herrlingers have maintained varying numbers of racing pigeons, including the necessary breeders, commencing with approximately 50 and most recently 200 or more. Mr. Herrlinger is a very accomplished, experienced and successful fancier of racing pigeons. At different times, defendants' pigeons, when released from their shelters, have flown over the Breyers' premises and have occasionally defecated upon items of laundry hanging to dry and onto the hamburgers and other food during outdoor parties conducted on plaintiffs' premises. Recognized

and accepted practices with respect to racing pigeons require that the pigeons be released for exercise in the morning and again in the evening. Based upon Mr. Herrlinger's personal time schedule, there would be no reason why the pigeons' exercise could not be concluded in the morning by 9 a.m. and there is no reason why it should commence in the evening before 5 p.m. There is only one exception to this arrangement, and that pertains to the young pigeons which he obtains in the early months of each year and for a week to 10 days for any young bird it is necessary for them to be released from their shelters with greater frequency as part of their training. Based upon the facts, there is no reason why such training of the young pigeons cannot be completed by the end of April.

## DISCUSSION

Plaintiffs have met their burden of proof by clear and convincing evidence that some of the activities about which they complain against defendants did, in fact, occur and are presently occurring. The chancellor is satisfied that some of these activities constitute a private nuisance which would give rise to injunctive relief, particularly with respect to the geese and the pond. The manner in which such activities are maintained or conducted constitute a substantial invasion of the property rights of plaintiffs and are unreasonably maintained by defendants. A balancing of the equities requires some relief to be given to plaintiffs without substantially prejudicing the property rights of defendants. Therefore, the following conclusions of law and decree nisi are entered.

## CONCLUSIONS OF LAW

1. The maintenance of the geese known as Canadian Honkers in any number by defendants upon their property constitutes a private nuisance to plaintiffs.

2. The spillage and stagnant water in the earth pond maintained by defendants on their premises is a private nuisance to plaintiffs.

3. Based upon the hours and schedules of defendants with respect to their maintenance of the racing pigeons on their premises, the maintenance of such racing pigeons on their premises constitutes a nuisance *only* to a limited degree to plaintiffs.

## DECREE NISI

And now, November 16, 1973:

1. Defendants are enjoined hereafter from maintaining on their premises situate on Magazine Road in Marlborough Township, Montgomery County, any Canadian Honkers;

2. Defendants are enjoined hereafter from maintaining the earth pond situate on their premises in a manner that would result in substantial spillage of water onto the premises of plaintiffs or which results in stagnation of the water therein to the extent that algae forms thereon or gives off noxious odors;

3. In the alternative, in the event defendants are unable to so maintain their pond, then they are mandatorily enjoined to remove same from their premises;

4. Defendants hereafter are enjoined from releasing any of their pigeons from their shelters between the hours of 9 a.m. and 5 p.m. on any day, except for the necessary training of the young pigeons, which said training shall be completed each year no later than April 30th;

5. It is not the intention of the chancellor that the foregoing condition concerning the racing pigeons shall interfere with the weekly races in which defendants participate during the pigeon racing seasons;

6. Both plaintiffs and defendants are ORDERED *not* to communicate any further complaints they have

in these proceedings or in respect to the mandates of this decree directly to each other, but shall only communicate such complaints through their respective counsel;

7. The costs of these proceedings shall be divided equally between the parties.

This decree shall become the final decree of the court unless exceptions to any part of this adjudication are filed within 20 days after receipt of notice of the filing of this adjudication by counsel for the parties.